IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-06-0001-MAG (MEJ) |
| Plaintiff, | |
| vs. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF FEDERAL JURISDICTION** |
| FELICIA DANIELA PEREZ, | |
| Defendant. | |

### I. INTRODUCTION

Before the Court is Defendant's Motion to Dismiss for Lack of Federal Jurisdiction, filed on July 6, 2006. Defendant Perez seeks to dismiss this case on the grounds that the federal government lacks jurisdiction over the Presidio of San Francisco. Having considered the arguments of counsel, the papers submitted, and good cause appearing the Court hereby DENIES Defendant's motion for the reasons set forth below.

### II. BACKGROUND

The underlying facts of the case are largely undisputed. On November 26, 2006, two United States Park Police Officers observed Defendant Perez driving a vehicle northbound on Lincoln Boulevard. (Def.'s Mot. to Dismiss at 1; Govt.'s Opp'n Mot. at 3.) The Officers observed damage to the Defendant's vehicle and noticed her driving erratically. (Govt.'s Opp'n Mot. at 3.) The

Officers effected a traffic stop and observed that Defendant displayed behaviors indicating she was under the influence of alcohol, such as slurred speech, red eyes, and alcohol emanating from her breath. (*Id.*) After administering several field sobriety tests, the two Officers detained Defendant and arrested her. (Def.'s Mot. to Dismiss at 1; Govt.'s Opp'n Mot. at 3.) These events all occurred within the boundaries of the Presidio in San Francisco. (*Id*; *Id.*)

On January 3, 2006, the United States filed an information against Defendant Perez. (Def.'s Mot. to Dismiss at 1; Govt.'s Opp'n Mot. at 3-4.) Count one of the information alleges that Defendant was operating a motor vehicle while under the influence of alcohol in violation of 36 C.F.R. §1004.23(a)(1). (*Id*; *Id.*) Count two of the information alleges that Defendant was driving with a Blood Alcohol Content of at least 0.08% in violation of 36, C.F.R. § 1004.23(a)(2). (*Id; Id.*)

On July 6, 2006, Defendant Perez filed a Motion to Dismiss the information on the grounds that the Government lacks jurisdiction over the Presidio, where the alleged offenses took place. On July 21, 2006, the United States filed an opposition.

### III. LEGAL STANDARD

In order for a federal court to exercise jurisdiction over a criminal action, the offense must have occurred within:

> [L]ands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

18 U.S.C. § 7(3) (2000); *see Volk v. U.S.*, 57 F. Supp. 2d 888, 893 (N.D. Cal. 1999). If a crime is committed within the boundaries of such land, federal courts have jurisdiction of the prosecution and to the exclusion of the state courts. *U.S. v. Unzeuta*, 281 U.S. 138, 142 (1930); *see also James Stewart & Co. v. Sadrakula*, 309 U.S. 94 (1940).

It is a well established principle of law that all federal legislation applies only within the territorial jurisdiction of the United States unless a contrary intent appears. *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652 (1930); *see also Caha v. U.S.*, 152 U.S. 211, 215 (1894). The power to exercise exclusive legislation means the same as exclusive jurisdiction. *Id.* In *Caha v. U.S.*, 152

2

U.S. 211, 215 (1894), the Supreme Court stated: "The laws of Congress in respect to those matters do not extend into the territorial limits of the states, but have force only in the District of Columbia, and other places that are within the exclusive jurisdiction of the national government." Where the United States has exclusive jurisdiction over an area within a state, "no other legislative power than that of [C]ongress can be exercised over " such land and this "operates to exclude all other legislative authority." *Fort Leavenworth R.R. Co. v. Lowe*, 114 U.S. 525, 537-38 (1885). A state's jurisdiction over its property is a question of federal law. *Paul v. U.S.,* 371 U.S. 245, 267 (1963).

## IV.  DISCUSSION

Defendant Perez seeks to dismiss the information on the following grounds: (1) California's 1897 cession Act contains language "for military purposes," which indicates that exclusive jurisdiction ceased when the Presidio was inactivated as a military base; (2) the language in *Fort Leavenworth R.R. Co. v. Lowe*, 114 U.S. 525, 542 (1885) and subsequent case law supports an implied condition of reversion of exclusive jurisdiction back to California when the Presidio ceased to be used for its stated purpose; and (3) California Government Code Sections 110, 113, 120 and 126 demonstrate that the California Legislature intended that the 1897 cession Act of exclusive federal jurisdiction over the Presidio to the United States be limited to the United States holding the Presidio for military purposes.

**A.    The United States Acquired the Presidio With No Condition, Express or Implied, That Would Cause a Reversion To The State Of California**

It is settled law that California ceded exclusive jurisdiction over the Presidio to the United States by the California Legislative Act of 1897. (St. Cal. 1897, p. 51); *Standard Oil Co. v. People of State of Cal.*, 291 U.S. 242, 244 (1934); *U.S. v. Watkins*, 22 F. 2d 437, 439 (N.D. Cal. 1927). The 1897 California Act conferring jurisdiction states:

> The State of California hereby cedes to the United States of America exclusive jurisdiction over all lands within this State now held, occupied, or reserved by the Government of the United States for military purposes or defense, or which may hereafter be ceded or conveyed to said United States for such purposes; *provided* that a sufficient description by metes and bounds and a map or plat of such lands be filed in the proper office of record in the county in which the same are situated; *and provided*

> *further*, that this State reserves the right to serve and execute on said lands all civil process, not incompatible with this cession, and such criminal process as may lawfully issue under the authority of this State against any person or persons charged with crimes committed without said lands. This Act shall take effect immediately.

Cal. Stat. 1897, c.56, p. 51. Defendant argues that because the 1897 California cession Act included the statement "for military purposes," jurisdiction ended when the Presidio was inactivated as a military base in 1995. Defendant's attempt to interpret the cession clause language "for military purposes" as a condition subsequent to transfer jurisdiction back to California is not supported by case law. Granting a reservation, a right of way, or entering into a commercial lease does not terminate the United State's exclusive jurisdiction. *Humble Pipe Line Co. v. Waggonner*, 376 U.S. 369, 372-74 (1964).

    1. <u>No express language exists in the 1897 Act that provides for reversion back to the State of California</u>

States may attach conditions to the cession of property, however, these conditions cannot be "inconsistent with the effective use of the property for the public purposes intended." *Chicago, Rock Island & Pac. Ry. Co. v. McGlinn,* 114 U.S. 542, 546 (1885)*; see generally S.R.A., Inc. v. Minn.*, 327 U.S. 558 (1945); *U.S. v. Unzeuta*, 281 U.S. 138 (1930). However, if no conditions are attached then courts cannot impose conditions not contemplated by the parties. Thus, the terms of the cession, "to the extent that they may lawfully be prescribed, determine the extent of the federal jurisdiction." *U.S. v. Unzeuta*, 281 U.S. 138, 142 (1930). Defendant provides no supporting case law for her position that conditions not contemplated by the parties can be placed onto their cession agreements. Instead, case law supports that cession language and conditions should be broadly construed. *Swords to Plowshares,* 423 F. Supp. 2d 1031, 1035-36 (N.D. Cal. 2005)*; see also Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518 (1938).

Had the 1897 Act been written to effect a reversion, the Act would have expressly provided for such a limitation. States may attach conditions to the cession of property, and federal jurisdiction can be exercised only for so long as those conditions are met. *See generally S.R.A.,* 327 U.S. at 564; *Unzeuta*, 281 U.S. at 142. Although a cession can include conditions within the grant

4

of jurisdiction, no express conditions appeared within the 1897 California Act. *Swords to Plowshares,* 423 F. Supp. 2d at 1035-36. The Court concludes that had California wished to include such language it would have done so.

Such grants of land with condition subsequents are commonly held to require language "so clear as to leave no doubt that the grantor intended that an estate upon condition subsequent should be created--language which *ex proprio vigore* imports such a condition." *Hawley v. Kafits*, 148 Cal. 393, 395 (1905) (quoting *Cullen v. Sprigg*, 83 Cal. 56, 64 (1890). Express terms or a clear implication is required to create a condition subsequent. *Id.* In *Crook, Horner & Co. v. Old Point Comfort Hotel Co.*, there was an express reverter clause in the act of cession, which limited the use of the land to defensive purposes. 54 Fed. 604, 605-06 (E.D. Va. 1839). The Court in *Crook* determined that the cession act contemplated the use of the land only for a fort, and forbade the land to be used for any other purpose or a reverter both of title and of jurisdiction to Virginia would occur. *Id*. The cession act in Crook expressly contained a reverter forbidding the land's use for hotel purposes. *Id*. The *Crook* court stated: "This is the only act of cession by a state to the United States which contains such a clause. All acts of cession contain the provision allowing the service of process, but in the various acts none appear to have this reverter clause." *Id*.

In contrast to *Crook*, California's 1897 Act does not contain such express language that provides a possibility of reverter upon some event. "No condition in a deed relied on to create a condition subsequent will be so interpreted if the language of the provision will bear any other reasonable construction." *Hawley,*148 Cal. at 394; *see also Springmeyer v. City of Lake Tahoe*, 132 Cal. App. 3d 375, 380-382 (1982) (explaining where reversion clause in a deed is unclear courts should construe language as to preclude reversion as it is a drastic remedy and clearly expressed language should be required to trigger such an event). The Court finds no such express language in the 1897 Act.

Furthermore, independent research provides no legislative history from California's 1897 Legislative Act indicating that exclusive jurisdiction would end when the Presidio ceased active military operations. Instead, a number of cases within this district have found the Presidio to be

5

within the exclusive jurisdiction of the federal government. *U.S. v. Watkins,* 22 F.2d 437, 439 (N.D. Cal. 1927)*; Standard Oil Co. v. People of State of Cal.,* 291 U.S. 242, 244 (1934)*, Volk v. U.S.,* 57 F. Supp. 2d 888, 893 (N.D. Cal. 1999);*, Swords to Plowshares,* 423 F. Supp. 2d at 1035-36. One court within this district would have even judicially noticed the fact that the Presidio is under the control of the federal government. *Volk,* 57 F. Supp. 2d at 893.

The Court finds no reason to interpret the fact that California ceded the land "for military purposes or defense" to mean that jurisdiction would remain only until the land ceased to be used as a military base. The Court does not find any such express restriction in the1897 cession statute. Therefore, Defendant's arguments must fail.

2. <u>Case law does not support a condition of implied reversion back to the State of California</u>

Defendant also argues that *Fort Leavenworth R.R. Co. v. Lowe*, 114 U.S. 525, 542 (1885) supports her position that an implied condition of reversion exists. In *Fort Leavenworth*, the Supreme Court considered whether a private railroad owner whose railroad was located on land owned by the United States, but within the State of Kansas, could be taxed by the State. 114 U.S. at 526. The subject land, the Fort Leavenworth Military Reservation, was a portion of the land France ceded to the United States in 1803. *Id.* When Kansas was admitted to the Union, the United States did not reserve to itself jurisdiction over the land. *Id.* at 526-27. Thus, even though the United States continued to own the land, "the possession was only that of an individual proprietor," and Kansas could have exercised authority and jurisdiction over the property as though owned by a private party. *Id.* at 527. The Kansas Legislature passed an Act in 1875 which purported to cede exclusive jurisdiction to the United States over Fort Leavenworth Military Reservation to resolve the conflict between ownership by the United States and control by Kansas. *Id.* at 528. Whether the United States could constitutionally accept jurisdiction and exercise such jurisdiction was in dispute because the Constitution through Art. I, § 8, cl. 17 provided for exclusive jurisdiction over only land that was "purchased" by the United States with a state legislature's consent. *Id.* at 530. The Court was presented with the issue of whether the United States Constitution provided a method of

6

1  obtaining exclusive jurisdiction over land it already owned, but did not purchase. *Id.* at 538-39.  The

2  Court concluded that even though the Fort Leavenworth Military Reservation was not "purchased by

3  consent of the legislature," Kansas' act ceding exclusive jurisdiction to the United States was a

4  permissible and effective way to transfer jurisdiction to the federal government. *Id.* at 542.

5       Defendant bases her contention that implied reversions exist on the following language from

6  *Fort Leavenworth*:

7       Such cession is really as much for the benefit of the State as it is for the
   benefit of the United States.  It is necessarily temporary, to be exercised
8       only so long as the places continue to be used for the public purposes for
   which the property was acquired or reserved from sale.  When they cease
9       to be thus used, the jurisdiction reverts to the state.

10  *Id.* at 542. (citations omitted).  Defendant argues this passage stands for the proposition that "even

11  though exclusive jurisdiction may have been ceded formally without limitation a reverter of

12  exclusive jurisdiction implicitly." (Def.'s Mot. To Dismiss at 6.)  First, the Court finds that the issue

13  of implied reversion was not before the court in *Fort Leavenworth.*  The *Fort Leavenworth* Court

14  only addressed whether a cession statute was a valid method for the United States to obtain

15  exclusive jurisdiction over land in a state.  Next, the passage Defendant cites was not essential to the

16  *Fort Leavenworth* Court's rationale finding cession statutes to be a permissible method for the

17  United States to acquire exclusive jurisdiction over land in a state.

18       Furthermore, the Supreme Court stated that the passage Defendant cites was an

19  "elaborat[ion] [of] the opinion" in the case. *Arlington Hotel v. Fant,* 278 U.S. 439, 451 (1929). A

20  law review article also found this exact *Fort Leavenworth* passage to be dicta. *See* Harry R. Fields,

21  Comment: *Jurisdiction Over Nationally Owned Areas*, 24 Cal. L. Rev. 573, 583-84 (1936) ("The

22  Supreme Court has by *dictum* stated the view that in the cession type at least, there is an implied

23  condition of reverter to the jurisdiction of the state upon such complete abandonment...") (citing

24  *Fort Leavenworth*, 114 U.S. at 542).  Defendant mistakenly reads the *Fort Leavenworth* language as

25  imposing an implied condition of reversion back California.

26       No authority has been submitted by Defendant for this proposition nor does any

27  independent research reveal any basis for concluding that when the Presidio ceased to operate as a

28

7

military base that this land would impliedly revert back to California. Lastly, this dicta fails to account for the raft of cases in which the Presidio has been found to be under exclusive federal jurisdiction. *U.S. v. Watkins,* 22 F.2d 437, 439 (N.D. Cal. 1927)*; Standard Oil Co. v. People of State of Cal.,* 291 U.S. 242, 244 (1934)*, Volk v. U.S.,* 57 F. Supp. 2d 888, 893 (N.D. Cal. 1999);*, Swords to Plowshares v. Kemp,* 423 F. Supp. 2d 1031, 1035-36 (N.D. Cal. 2005)*.* Upon review of the *Fort Leavenworth* decision, the Court does not find this passage controlling.

3. <u>Subsequent case law does not support a condition of implied reversion</u>

Next, Defendant argues that subsequent case law since *Fort Leavenworth* supports her argument for an implied reversion. Defendant relies on the following three cases: *S.R.A. v. Minn.*, 327 U.S. 558 (1946), *U.S. v. Goings,* 504 F.2d 809 (1974*)*, and *La Duke v. Melin,* 177 N.W. 673 (N.D. 1920).

In *S.R.A.*, after receiving property by purchase, the United States subsequently vacated and sold the property. 327 U.S. at 563. The Court held that where the United States, while retaining what in essence was a mortgage, had sold land and buildings formerly used for government purposes it thereby in effect surrendered its former exclusive jurisdiction. *Id*. Thus, the Court indicated that the sale of the property to a private party ended the United States' exclusive control. *Id.* In *Goings*, the government deeded the property to a private party, thus completely relinquishing its right to the property. 504 F.2d at 811-812. In *La Duke*, there had been complete abandonment of a military reservation, which by Act of Congress and a President's Proclamation had opened the land to homesteaders and declared the federal land abolished. 177 N.W. at 675-76. The present situation is distinguishable from all of the above cited cases. The Presidio has not been abandoned, sold to a third party, or declared open space by Congress. Case law only supports a reversion upon complete abandonment and disposition of the property by a sale to a private party. Therefore, Defendant's argument lacks merit.

**B. The United States May Use Land For Other Purposes Without Losing Exclusive Federal Jurisdiction**

Defendant's attempt to interpret the cession clause language "for military purposes" as a

8

1 condition requiring only this use is not supported by case law.  The federal government has retained
2 exclusive jurisdiction over lands originally used for military purposes that were later granted a
3 reservation, a right of way, or commercial lease without losing exclusive jurisdiction.  *Humble Pipe*
4 *Line v. Waggonner*, 376 U.S. 369, 372-74 (1964); *see also Arlington Hotel Co. v. Fant*, 278 U.S.
5 439, 451 (1929); *U. S. v. Unzeuta*, 281 U.S. 138, 142 (1930); *Benson v. U.S.*, 146 U.S. 325, 331
6 (1892).  In *Humble*, the United States acquired a fee simple title to a tract of land in 1930 by cession
7 from the State of Louisiana, for the purpose of using the land as a military base. 376 U.S. at 371.
8 The cession statute contained no conditions and only  reserved the administration of criminal laws
9 and service of civil process. *Id*. at 371.  The United States then leased rights to exploit parts of the
10 reservation for oil and gas. *Id.* at 372.  The Court held that the United States Government did not
11 lose exclusive jurisdiction over the land by entering into a lease agreement. *Id*.  The Court stated that
12 cession of jurisdiction will not revert to the state merely because some parts of a parcel are no longer
13 used in the manner in which the state intended.  *Id.* at 372-73.

14 The Court finds the reasoning in *Humble* to be persuasive as applied to the instant case.
15 Here, administrative jurisdiction over the Presidio was conveyed to The Presidio Trust in 1996 after
16 the military base was inactivated.  The Presidio Trust enters into commercial leases with private
17 parties on the land.  Further, the Presidio has been a part of the Golden Gate National Recreation
18 Area so its splendor could be shared with the nation. (H.R. CONF. REP. NO. 104-836, at 1 (1996).
19 The military quarters have also been deemed historical sites as the Presidio was one of the oldest
20 continuously active military installations in the nation. *Id.*  The fact that The Presidio Trust leases
21 some of the property for commercial purposes and manages other parts with the Golden Gate
22 National Recreation Area does not change the United State's exclusive jurisdiction over the
23 Presidio.  *Humble*, 376 U.S. at 373.

24 A case within this district has also explicitly rejected Defendant's argument.  In *Swords to*
25 *Plowshares v. Kemp,* 423 F. Supp. 2d 1031, 1035-36 (N.D. Cal. 2005), the court strictly construed
26 the language "for military purposes"  in the 1897 California cession act.  The *Swords*' court found no
27 restricting language in the 1897 cession statute which indicated jurisdiction over the Presidio

28

9

reverted back to California when it ceased to be used for military purposes. *Id.* Here, the Court also strictly construes the 1897 California cession act so that the language "for military purposes" does not create a condition subsequent. The Presidio did not automatically revert back to California the moment it ceased to be used as a military base. Accordingly, the Court finds that the United States did not lose exclusive jurisdiction over the Presidio.

**C.     Subsequent California Legislation Did Not Remove The Presidio From The United States' Exclusive Jurisdiction**

Defendant concedes that the Presidio was a federal enclave in 1897, but argues that the Presidio lost such status when it was inactivated as a military base and transferred to The Presidio Trust. Defendant relies on California legislation passed after the 1897 Act to support her position that the legislative intent demonstrates that the jurisdiction has been disrupted between the United States and California. Specifically, she contends that California Government Code Sections 110, 113, 120, and 126 affect the jurisdiction of the United States over the Presidio.[1]

Each section Defendant cites was passed subsequent to the 1897 cession act. Subsequent amendments do not affect the 1897 cession act. *U.S. v. Unzeuta*, 281 U.S. 138, 142 (1930). Since a state may not legislate with respect to a federal enclave unless it reserved the right to do so when it gave its consent to the United States, only state laws existing at the time of the acquisition remain enforceable, not subsequent laws. *Id; see also James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 100 (1940). "[A]fter jurisdiction has been accepted by the United States, it cannot be recaptured by the action of the State alone." *Id.* Therefore, Defendant's arguments lack merit.

**D.     The Property Clause Does Not Provide a Relevant Basis To The Arguments Presented**

The Government argues that because the Presidio is federal land Congress can enact rules and regulate this land. Here, the Court finds that the Property Clause argument is not relevant to address the Defendant's contentions.

---

[1] All references herein made are to the California Government Code. Additionally, the Court judicially notices these California Government Code Sections according to Fed.R Evid 201(b).

10

## V. CONCLUSION

Based on the analysis above, the Court hereby DENIES Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: October 4, 2006

MARIA-ELENA JAMES
United States Magistrate Judge

11